UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
:    Cas No.: 21-cv-02148 (RPK) (PK)
JIAN TAM and MADE IN BROOKLYN :
DESIGNS, INC. :
:    **AMENDED COMPLAINT**
                        Plaintiffs, :
:    **JURY TRIAL DEMANDED**
     -against- :
:
MIH CP SOLUTIONS, LLC, JIM PICCILLO, :
VINCE BRYNICZKA and MARCO MORAN, :
:
                        Defendants. :
:
---------------------------------------------------------------X

      Plaintiffs, JIAN TAM ("Tam") and MADE IN BROOKLYN DESIGNS, INC. ("MIB") (collectively, the "Plaintiffs"), by and through the undersigned counsel, as and for its amended complaint against defendants MIH CP SOLUTIONS, LLC ("MIH CP"), JIM PICCILLO ("Piccillo"), VINCE BRYNICZKA ("Bryniczka") and MARCO MORAN ("Moran") (collectively, the "Defendants") asserts as follows:

<u>**PRELIMINARY STATEMENT**</u>

      1.     This is a civil action for breach of contract, unjust enrichment and conversion arising out of a joint venture by and between Plaintiff, on the one hand, and defendants MIH CP and Piccillo, on the other hand (the "Joint Venture"), which was formed for the purpose of supplying personal protective equipment ("PPE") to front line workers within and without the state of New York pursuant to a certain Joint Venture Agreement, dated March 19, 2020, Amendment 1 to Joint Venture Agreement, dated April 18, 2020, and Amendment 2 to Joint Venture Agreement, dated May 15, 2020 and related communications (the "Joint Venture Agreements").

2. In connection with the Joint Venture business, the Plaintiffs and Defendants each received commissions from the pre-payment of PPE in excess of 390,666.00.

3. Ultimately, the Joint Venture was unable to secure the PPE and requested that each of the Defendants return the commissions they had received for products that could not be delivered.

4. Despite due demand, each of the Defendants have failed and refused to return said commissions, giving rise to the instant lawsuit.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction over this civil action under 28 U.S.C. § 1332(a) as complete diversity of citizenship exists between Plaintiffs and Defendants and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

6. This Court has supplemental jurisdiction over Plaintiffs' New York State law claims under 28 U.S.C. § 1367(a).

7. This Court has jurisdiction over each of the non-resident Defendants pursuant to CPLR §§ 301 and 302 (1), (2) and (3).

8. This Court has jurisdiction over each of the non-resident Defendants because they have committed a tort, in whole or in part, in the State of New York and have transacted business within the state and/or outside of the state to supply goods or services in the state.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions underlying the asserted claims arose in or from the Eastern District of New York or affect commerce in this District.

10. As an example, the Defendants each received commissions from purchase orders entered into and executed by MIH CP and MIB, pursuant to purchase order identifying the Joint Venture's address as 53 Richards Street, Brooklyn, New York 11231.

## THE PARTIES

11. At all relevant times, Tam was an adult individual residing in the State of New York, County of Kings.

12 At all times relevant, MIB was a domestic corporation duly organized and existing under and by virtue of the laws of the State of New York, having its principal place office for the transaction of business in Kings County.

13. Upon information and belief and at all times relevant, MIH CP was a foreign corporation organized and existing under the laws of the State of Florida, having its principal office for the transaction of business at 1101 Fredrick Lane, Brandon, Florida, 33511.

14. Upon information and belief and at all times relevant, Piccillo was an adult individual residing in the State of Florida.

15. Upon information and belief and at all times relevant, Piccillo was the President of MIH CP.

16. Upon information and belief and at all times relevant, Bryniczka was an adult individual residing in the State of Florida.

17. Upon information and belief and at all times relevant, Bryniczka was the Vice President of MIH CP.

18. Upon information and belief and at all times relevant, Moran was an adult individual residing in the State of Texas.

## ALTER EGO ALLEGATIONS

19. Upon information and belief and at all relevant times hereto, Piccillo and Bryniczka wholly owned and operated MIH CP, interchanged and commingled the receipts, disbursements, assets and properties of said corporation and their own.

20. Upon information and belief and at all relevant times hereto, MIH CP was created, operated and/or manipulated by Piccillo and Bryniczka as a device and artifice for the purpose and with the intention of defrauding all persons, including Plaintiffs, who were injured by said defendants, so that such persons would not be able to recover the full amount of damages sustained by them; that MIH CP was an instrument and agent of Piccillo and Bryniczka, in that said corporation did not have an existence of its own.

21. Upon information and belief and at all times relevant hereto, Piccillo and Bryniczka principally or partially financed defendant MIH CP from time to time from their own personal funds, insofar as said entity was financed.

22. Upon information and belief and at all times relevant hereto MIH CP has no substantial assets except those conveyed to it by Piccillo and Bryniczka, and all assets listed on the books of said entity were hypothecated to various banks, lenders or transacting parties, and the funds resulting from such loans and hypothecations were appropriated by Piccillo and Bryniczka for their own use.

23. Upon information and belief and at all times relevant hereto, the income and funds of MIH CP, Piccillo and Bryniczka were commingled and utilized solely for the benefit and advantage of Piccillo and Bryniczka.

24. Upon information and belief and at all times relevant hereto, the various expenses of MIH CP, and the losses incurred in the name of said defendant was paid from monies contributed to it by Piccillo and Bryniczka.

25. Upon information and belief and at all times relevant hereto, Piccillo and Bryniczka dealt with and used the properties and assets of defendant MIH CP as their own property and assets.

26. Upon information and belief and at all times relevant hereto, Piccillo and Bryniczka were the sole directors, officers, agents and/or employees of MIH CP, and did not act in the interests of said entity, instead they acted in their own self interests.

27. Upon information and belief and at all times relevant hereto, Piccillo and Bryniczka diverted and utilized the business and property of MIH CP for their own benefit and advantage.

28. Upon information and belief and at all times relevant hereto, Piccillo and Bryniczka dictated the policies and actions and dominated defendant MIH CP.

29. Upon information and belief and at all times relevant hereto, by virtue of the aforementioned, the affairs, assets, property and identity of MIH CP is so closely interwoven and intermingled that the dividing line between the affairs, assets and property and identity of MIH CP, Piccillo and Bryniczka are practically indistinguishable and non-existent.

30. Upon information and belief and at all times relevant hereto, MIH CP, Piccillo and Bryniczka made no attempts to preserve and maintain a semblance of the formalities and legal requirement of separate identity of MIH CP.

31. Upon information and belief, there exists a unity of interest and ownership between MIH CP, Piccillo and Bryniczka such that the separate personalities of a corporation and its shareholders no longer exist.

32. Upon information and belief MIH CP was operated as a conduit for the affairs of Piccillo and Bryniczka.

33. Upon information and belief, MIH CP, Piccillo and Bryniczka all comingled funds.

34. Upon information and belief and at all times relevant hereto, MIH CP acted at the behest of Piccillo and Bryniczka, who has dominated and continues to dominate said limited liability company such that MIH CP was their alter ego.

35. In the light of the foregoing, Plaintiffs request that Piccillo and Bryniczka be held jointly and severally liable for any financial loss incurred by the Plaintiffs.

## COMMISSION OF THE TORT LIQABILITY

36. Separately, Piccillo and Bryniczka are liable to the Plaintiffs under the commission of the tort doctrine for their role in aiding and abetting MIH CP's theft and conversion of Joint Venture funds.

## FACTS COMMON TO THE N95 PPE TRANSACTIONS

37. On or about April 19, 2020, the Plaintiffs, Piccillo and MIH CP, entered into a Master Supply Agreement with a 3M authorized PPE distributor of N95 Respirator Masks ("N95 PPE"), non-party Hot Zone USA LLC ("Hot Zone") in furtherance of the Joint Venture's business of procuring PPE equipment for re-sale within and without the State of New York.

38. In addition, the Joint Venture entered into agreements with Global Management Services LLC ("Global") for the purchase of additional N95 PPE (the "Global Agreements").

39. In accordance with the terms of the Master Supply Agreement and Global Agreements, the Joint Venture submitted purchase orders totaling $5,958,870.00.

40. Upon information and belief, Piccillo received not less than $183,333.00 in commissions from the purchase orders placed with Hot Zone and Global.

41. Upon information and belief, Bryniczka received not less than $183,333.00 in commissions from the purchase orders placed with Hot Zone and Global.

42. Upon information and belief, Moran received not less than $23,750.00 in commissions from the purchase orders placed with Hot Zone and Global.

43. Upon information and belief, in or around the Summer of 2020, Hot Zone was terminated as an authorized 3M PPE distributor.

44. Upon information and belief, in or around September of 2020, Hot Zone cancelled its purchase orders with the Joint Venture and refunded the sums paid to it by the Joint Venture.

45. On September 16, 2020, MIB cancelled its purchase orders with Global due to its inability to timely procure N95 PPE for re-sale to MIB.

46. Upon termination of the Hot Zone and Global purchase orders, Plaintiffs demanded that the Defendants return all commissions paid to each of them.

47. Despite the foregoing demand, each of the Defendants failed and refused to return the entirety of the commissions paid to each of them.

48. As a result of the foregoing, Plaintiffs have been damaged in the sum of not less than $390,666.00, representing the sums due and owing back to Hot Zone and Global.

49. In addition, Plaintiffs have been forced to expend not less than $95,721.00 in legal fees on behalf of the Joint Venture.

## FACTS COMMON TO THE KN95 PPE TRANSACTION

50. On April 15, 2020, Tam and Piccillo entered into a separate agreement for the purchase of 100,000 KN95 masks ("KN95") for $1.60 per mask ("KN95 Agreement").

51. On or about April 16, 2020, Tam advanced the $160,000.00 purchase price for the KN95 PPE on behalf of himself and Piccillo.

52. To date and despite due demand, Piccillo has failed and refused to reimburse Tam for the $80,000.00 paid on his behalf for the purchase of the KN95 masks.

53. As a result of the foregoing, Tam has been damaged in the sum of not less than $80,000.00.

### AS AND FOR A FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT AGAINST MIH CP AND PICCILLO

54. Plaintiffs repeat, reiterate and re-allege each and every allegation as set forth in paragraphs "1" through "53" with the same force and effect as if fully set forth herein.

55. Pursuant to the Joint Venture Agreements, Plaintiffs, MIH CP and Piccillo agreed to share the "Joint Venture Proceeds" resulting from the successful sale of PPE equipment on an equal basis.

56. Upon cancellation of the Hot Zone and Global purchase orders, Plaintiffs demanded that MIH CP and Piccillo return to the Joint Venture all Joint Venture Proceeds received from cancelled Hot Zone purchase orders.

57. Despite due demand, MIH CP and Piccillo have failed and refused to return the Joint Venture Proceeds received by them and for which they have no right to retain due to the cancellation of the Hot Zone and Global purchase orders.

58. MIH CP and Piccillo's failure to return the Joint Venture Proceeds received by them from the cancelled purchase orders constitutes a breach of the Joint Venture Agreements.

59. Moreover, pursuant to the Joint Venture Agreements, all expenses associated with the Joint Venture were to be shared on an equal basis by the parties to the Joint Venture Agreements.

60. Plaintiffs have performed all covenants, conditions and promises required of them under the Joint Venture Agreements.

61. In light of the foregoing, Plaintiffs have been damaged in a sum of not less than $480,666.00.

**AS AND FOR A SECOND CAUSE OF ACTION FOR BREACH OF CONTRACT AGAINST PICCILLO**

62. Plaintiffs repeat, reiterate and re-allege each and every allegation as set forth in paragraphs "1" through "61" with the same force and effect as if fully set forth herein.

63. Plaintiffs have performed all covenants, conditions and promises required of them under the KN95 Agreement.

64. Piccillo breached the KN95 Agreement by failing to reimburse Tam the $80,000 advanced on his behalf for the purchase of the KN95 PPE.

65. In light of the foregoing, Plaintiffs have been damaged in a sum of not less than 80,000.00.

**AS AND FOR A THIRD CAUSE OF ACTION FOR CONVERSION AGAINST ALL DEFENDANTS**

66. Plaintiffs repeat, reiterate and re-allege each and every allegation as set forth in paragraphs "1" through "65" with the same force and effect as if fully set forth herein.

67. Upon information and belief, Piccillo and Bryniczka received all or substantially all of the Joint Venture Proceeds on behalf of MIH CP.

68. Neither Piccillo, Bryniczka or Moran were entitled to retain Joint Venture Proceeds or referral fees upon cancellation of the Hot Zone and Global purchase orders.

69. The Joint Venture Proceeds and referral fees paid to the Piccillo, Bryniczka and Moran were the property of the Joint Venture to be repaid by the Joint Venture to its customers upon cancellation of the Hot Zone and Global purchase orders.

70. In light of the foregoing, Plaintiffs have been damaged in a sum of not less than $486,387.00.

### AS AND FOR A FOURTH CAUSE OF ACTION FOR UNJUST ENRICHMENT AGAINST ALL DEFEDANTS

71. Plaintiffs repeat, reiterate and re-alleges each and every allegation as set forth in paragraphs "1" through "70" with the same force and effect as if fully set forth herein.

72. By reason of the forgoing, the Defendants have received Joint Venture Proceeds and referral fees from the cancelled Hot Zone and Global purchase orders which they cannot in good conscience be allowed to retain

73. By reason of the foregoing, the Defendants have been unjustly enriched.

74. In light of the foregoing, Plaintiffs have been damaged in a sum of not less than $486,387.00.

### JURY DEMAND

68. Plaintiffs demand a trial by jury in this action

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against the Defendants as follows:

a. On the First Cause of Action against defendants MIH CP and Piccillo in a sum of not less than $486,387.00;

b. On the Second Cause of Action against Piccillo in in the sum of in a sum of $80,000;

c. On the Third Cause of Action against all Defendants in the sum of not less than 486,387.00;

d. On the Fourth Cause of Action against Defendants in in the sum of in a sum of not less than $486,387.00.

e. Reasonable attorney's fees, costs and disbursements of this action; and

f. Such other and further relief as this Court deems just and proper.

Dated: June 28, 2021
       Garden City, New York

                              Respectfully submitted,

                              **BARROWS LEVY PLLC**

                              By: /s/ *Michael C Barrows*

                                  Michael C. Barrows, Esq. (MB5416)
                                  *Attorneys for the Plaintiffs*
                                  100 Quentin Roosevelt Blvd, Suite 210
                                  Garden City, New York 11530
                                  (516) 744-1880

## **VERIFICATION**

STATE OF NEW YORK)

COUNTY OF _____)

    I, JIAN TAM, am a plaintiff in the within action for a divorce. I have read the foregoing Complaint and know the contents thereof. The contents are true to my own knowledge except as to matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

                                                       _____
                                                       JIAN TAM

Sworn to before me this
____ day of Defendant, 2020

_____
Notary Public